

U.S. Department of Justice
Civil Division

Tel: (202) 305-8648

March 2, 2026

Lyle W. Cayce, Clerk
United States Court of Appeals for the Fifth Circuit
F. Edward Hebert Building
600 S. Maestri Place
New Orleans, LA 70130-3408

RE:  *Carroll Indep. Sch. Dist. v. U.S. Dep't of Ed.*, No. 25-10651

Dear Mr. Cayce:

      The government respectfully writes pursuant to Rule 28(j) to advise this court of the decision in *Tennessee v. McMahon*, No. 2:24-cv-00072, Dkt. No. 234 (E.D. Ky. Feb. 25, 2026) (attached hereto). *Tennessee* arises in a functionally identical posture to this case: after the *Tennessee* district court vacated the 2024 Title IX Rule, the same two interest groups that sought intervention here—A Better Balance (ABB) and Victim Rights Law Center (VRLC)—sought to intervene and appeal in the federal government's place.

      On February 25, just as the district court did here, the *Tennessee* court denied intervention because neither ABB nor VRLC possessed Article III standing. It rejected the putative intervenors' reliance on *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), noting that *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024), sharply curtailed the circumstances in which *Havens* applies.  Op. 9-10.  It further explained that "nothing in the [now-applicable] 2020 Rule has any direct negative effect on A Better Balance's ability to advocate, counsel, or operate its helpline," Op. 11, and that any impact the vacatur "will have on the Victim Rights Law Center's clients is irrelevant to whether the Victim Rights Law Center itself has first-party organizational standing," Op. 12.  A contrary holding, it explained, would mean that "practically every law firm in the country would be converted into a standing-creation machine," a result "plainly … inconsistent with existing standing doctrine."  Op. 17.  Finally, it explained that ABB could not base

standing on an asserted procedural injury because an alleged procedural violation does not affect the obligation to identify an Article III injury.  Op. 17-18.

The *Tennessee* decision addresses the exact same question as this appeal; it arises in the same factual posture and involves the same parties.  It thus further confirms that the district court here properly denied intervention for lack of Article III standing.

Sincerely,

/s/ *Steven A. Myers*
Steven A. Myers

cc: all counsel (by ECF)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
at Covington

| | | |
|---|---|---|
| STATE OF TENNESSEE, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. |
| | ) | 2:24-cv-00072-SCM-CJS |
| v. | ) | |
| | ) | |
| LINDA MCMAHON, in her official capacity as Secretary of Education, et al., | ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

A coalition of States filed suit in early 2024 to challenge the United States Department of Education's newly promulgated Title IX regulations. The States won. The Department of Education examined this Court's ruling and elected not to appeal. Two organizations—A Better Balance and the Victim Rights Law Center—moved to intervene so they could independently appeal. When this Court did not rule on their motions by the deadline to appeal, they decided to appeal anyway. The Sixth Circuit remanded the case so this Court could rule on the motions to intervene in the first instance. Having reviewed the briefing and heard oral argument, the Court denies those motions because the proposed intervenors lack Article III standing.

**I.  Background**

A Better Balance "is a national nonprofit legal advocacy organization dedicated to advocating for pregnant, parenting, and caregiving workers and students."  [Dkt.

152-2 at 1–2 ¶ 2]. It does this "through legislative advocacy, direct legal services, and strategic litigation, among other avenues." [*Id.*]. "A significant portion of [A Better Balance's] legal work consists of counseling workers and students who contact [it] through [its] free legal helpline." [*Id.* at 3 ¶ 6].

The Victim Rights Law Center is a nonprofit organization "dedicated solely to serving the legal needs of victims of sex-based harassment." [Dkt. 164-2 at 4 ¶ 6]. Its "mission is to provide legal representation to such victims to help rebuild [victims'] lives and to promote a national movement committed to seeking justice for every victim." [*Id.* ¶ 6]. Part of its work includes providing or facilitating the provision of "legal services to students who have experienced sex-based harassment," which includes providing educational services and communicating directly with schools on behalf of victims. [*Id.* at 4–5 ¶ 8].

The underlying subject of this case is the United States Department of Education's final rule interpreting Title IX of the Education Amendments of 1927 ("Title IX"), 20 U.S.C. § 1681 *et seq. See Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance*, 89 Fed. Reg. 33,474 (Apr. 29, 2024) (to be codified at 34 C.F.R. § 106, *et seq.*) (the "2024 Rule"). The Plaintiff States sued, seeking vacatur of the 2024 Rule, an injunction against its enforcement, and an injunction against withholding Title IX funding from the Plaintiff States for refusing to comply with the 2024 Rule. [Dkt. 1 at 81–82].

On June 17, 2024, this Court granted a preliminary injunction to the Plaintiffs, enjoining the Federal Defendants from taking any action to enforce the 2024 Rule

against the Plaintiffs. [Dkt. 100 at 93]. After obtaining preliminary injunctive relief, the Plaintiffs sought summary judgment and vacatur of the 2024 Rule. [Dkt. 126; Dkt. 127]. On January 9, 2025, the Court issued an opinion and judgment vacating the 2024 Rule in its entirety. [Dkt. 143; Dkt. 144]. Later, on January 31, 2025, the Department of Education issued a "Dear Colleague Letter" explaining that it would begin enforcing the 2020 Rule, thus signaling that it did not intend to appeal this Court's judgment. Off. for Civ. Rts., U.S. Dep't of Educ., *Dear Colleague Letter on Title IX Enforcement* (as amended Feb. 4, 2025) (available at https://perma.cc/2AVR-ERR7); *see also Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Funding Assistance*, 85 Fed. Reg. 30,026 (May 19, 2020) (the "2020 Rule"). Shortly thereafter, the United States District Court for the Northern District of Texas also vacated the 2024 Rule. *See Carroll Indep. Sch. Dist. v. U.S. Dep't of Educ.*, No. 4:24-cv-00461-O, 2025 WL 1782572 (N.D. Tex. Feb. 19, 2025).[1]

---

[1] Several other courts around the country also vacated the 2024 Rule or enjoined its enforcement. *See Alabama v. U.S. Sec'y of Educ.*, No. 24-12444, 2024 WL 3981994 (11th Cir. Aug. 22, 2024) (granting an injunction pending appeal); *Oklahoma v. Cardona*, 743 F. Supp. 3d 1314 (W.D. Okla. 2024); *Arkansas v. U.S. Dep't of Educ.*, 742 F. Supp. 3d 919 (E.D. Mo. 2024); *Texas v. United States*, 740 F. Supp. 3d 537 (N.D. Tex. 2024); *Kansas v. U.S. Dep't of Educ.*, 739 F. Supp. 3d 902 (D. Kan. 2024); *Louisiana v. U.S. Dep't of Educ.*, 737 F. Supp. 3d 377 (W.D. La. 2024). After the Sixth Circuit declined to stay this Court's preliminary injunction, *see Tennessee v. Cardona*, No. 24-5588, 2024 WL 3453880 (6th Cir. July 17, 2024), and the Fifth Circuit declined to stay the Louisiana district court's preliminary injunction, *see Louisiana v. U.S. Dep't of Educ.*, No. 24-30399, 2024 WL 3452887 (5th Cir. July 17, 2024), the Supreme Court also declined to issue a stay of those injunctions, *see Dep't of Educ. v. Louisiana*, 603 U.S. 866 (2024).

On February 26, 2025, A Better Balance filed a motion to intervene and a motion to extend the appeal deadline. [Dkt. 152; Dkt. 153]. On February 28, 2025, the Victim Rights Law Center and an anonymous university student did the same. [Dkt. 164; Dkt. 165]. The student's claims have since been mooted, [Dkt. 196 at 2 n.1; Dkt. 199 at 1 n.2], but A Better Balance and the Victim Rights Law Center (together, the "Proposed Intervenors") still seek to intervene to appeal the Court's vacatur of the 2024 Rule. [Dkt. 152 at 1–2; Dkt. 164 at 2]. The Plaintiff States, Intervenor Plaintiffs,[2] and Defendants all oppose A Better Balance's and the Victim Rights Law Center's proposed intervention. [Dkt. 175; Dkt. 176; Dkt. 177].

On March 10, 2025, the Proposed Intervenors filed notices of appeal. [Dkt. 181; Dkt. 182]. This Court then held that the notices of appeal divested it of jurisdiction over the pending motions to intervene and denied them as moot. [Dkt. 185]. In October 2025, the Sixth Circuit Court of Appeals granted the Proposed Intervenors' motions in that court to remand their pending appeals "for the limited purpose of permitting the district court to adjudicate the parties' motions to intervene." [Dkt. 195 at 3]. On a motion from the Proposed Intervenors, this Court then vacated its prior order to the extent it denied their Motions to Intervene as moot, reinstated their Motions to Intervene, and set a briefing schedule. [Dkt. 196; Dkt. 199].

Following a brief stay because of a federal government shutdown, the parties and Proposed Intervenors fully briefed the motions to intervene, and the Court

---

[2] *I.e.*, the Christian Educators Association International and A.C., by her next friend and mother Abigail Cross, whose motion to intervene was granted on May 8, 2024. [Dkt. 50].

4

subsequently held oral argument. *See* [Dkt. 199; Dkt. 207; Dkt. 226]. In the meantime, the Northern District of Texas considered essentially identical motions to intervene by A Better Balance and the Victim Rights Law Center. It denied those motions, concluding that the Proposed Intervenors lacked Article III standing. *See Carroll Indep. Sch. Dist. v. U.S. Dep't of Educ.*, No. 4:24-cv-00461-O, 2025 WL 1782571 (N.D. Tex. May 15, 2025). This Court finds that decision persuasive and reaches the same conclusion.

## II.  Analysis

The Proposed Intervenors seek entry into this case through both intervention of right and permissive intervention under Federal Rule of Civil Procedure 24. Rule 24(a)(2) establishes four requirements for intervention of right: "(1) timeliness of the application to intervene, (2) the applicant's substantial legal interest in the case, (3) impairment of the applicant's ability to protect that interest in the absence of intervention, and (4) inadequate representation of that interest by parties already before the court." *United States v. Tennessee*, 260 F.3d 587, 591–92 (6th Cir. 2001); *see* Fed. R. Civ. P. 24(a)(2). Rule 24(b)(1)(B) provides that "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact."

But before the Court can even address Rule 24, there is a more important preliminary inquiry—Article III standing. Article III of the United States Constitution "confines federal courts to adjudicating actual cases or controversies." *Cherry Hill Vineyards, LLC v. Lilly*, 553 F.3d 423, 428 (6th Cir. 2008). The case-or-

controversy requirement is a critically important component in maintaining the Constitution's separation of powers. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 337–38 (2016). It does much of the work in ensuring that the judicial power does not overflow its banks and deluge the other branches. And a key element of the case-or-controversy requirement is the concept of standing. *Tenn. Conf. of the NAACP v. Lee*, 105 F.4th 888, 901–02 (6th Cir. 2024).

To establish standing, a party must satisfy three elements: (1) it must have "suffered (or will suffer) a 'concrete and particularized' injury"; (2) there must be a "causal connection" between the injury and the conduct complained of; and (3) "the requested remedy will redress the injury." *Id.* at 902 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). Most people think of standing as an issue that is analyzed at the outset of a lawsuit. And that is often the context in which the issue arises. But standing is just as important when one seeks to intervene for the purpose of appealing a judgment that the original parties do not desire to appeal. *See Grae v. Corr. Corp. of Am.*, 57 F.4th 567, 569 (6th Cir. 2023). Without standing, the proposed intervenor cannot be allowed to step into the case and appeal. *See id.*; *see also Chapman v. Tristar Prods., Inc.*, 940 F.3d 299, 304 (6th Cir. 2019) (holding that "intervenors must establish Article III standing if they wish to *appeal* the outcome of a lawsuit"). Such is the case here, where neither A Better Balance nor the Victim Rights Law Center can satisfy the requirements for Article III standing.

### A.   The Proposed Intervenors lack Article III standing.

A Better Balance and the Victim Rights Law Center bear the burden of demonstrating that they satisfy the requirements of Article III standing. *See Wittman v. Personhuballah*, 578 U.S. 539, 545 (2016) (quoting *Lujan*, 504 U.S. at 561); *see also NAACP*, 105 F.4th at 903 (the burden to show standing increases as lawsuit continues). However, neither asserts that it is directly regulated by the 2020 Rule or the 2024 Rule; instead, each alleges that its harms stem from how the Rules regulate "someone else." *NAACP*, 105 F.4th at 902 (quoting *Lujan*, 504 U.S. at 562) (emphasis omitted). This makes their burden "substantially more difficult." *Id.* (quoting *Lujan*, 504 U.S. at 562). Ultimately, their arguments falter on several grounds and they are unable to meet their burden.

The Proposed Intervenors assert similar injuries. First, both claim that this Court's vacatur of the 2024 Rule and the Department of Education's return to enforcing the 2020 Rule will require them to spend more time and resources on advocacy and offering advice about the requirements of Title IX. [Dkt. 152-1 at 22; Dkt. 164-1 at 10–11, 15–16]. They contend that this diversion of their resources will then limit their ability to engage in other activities they would prefer. [Dkt. 152-1 at 22; Dkt. 164-1 at 15–16]. They also both assert that the vacatur of the 2024 Rule and reversion to the 2020 Rule has caused a frustration, or perceptible impairment, of

their organizational missions.³ [Dkt. 152-1 at 22; Dkt. 164-1 at 11–13]. These allegations are unavailing.

Supreme Court and Sixth Circuit precedents belie the notion that the alleged diversion of resources can satisfy the injury-in-fact requirement here. *See FDA v. All. for Hippocratic Med.*, 602 U.S. 367 (2024); *Fair Hous. Ctr. of Metro. Detroit v. Singh Senior Living, LLC*, 124 F.4th 990, 993 (6th Cir. 2025). In *Alliance for Hippocratic Medicine*, various medical associations challenged FDA regulations that made it easier for pregnant women to obtain an abortion pill called mifepristone. 602 U.S. at 372–74, 394. The groups claimed they had standing because the challenged "FDA regulations" were "forcing them to devote extra time and expense to informing the public about the risks of the abortion drug" and made public education "more difficult." *NAACP*, 105 F.4th at 905 (citation omitted); *All. for Hippocratic Med.*, 602 U.S. at 395. But the United States Supreme Court disagreed, instead directing that "an organization that has not suffered a concrete injury caused by a defendant's action cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action." *All. for Hippocratic Med.*, 602 U.S. at 394.

Post-*Alliance*, the Sixth Circuit has stated that "[i]t is not enough to broadly gesture toward 'a drain on an organization's resources' and call it a day, as some of our pre-*Alliance* cases have done." *Fair Hous. Ctr.*, 124 F.4th at 993. Put differently,

---

³ The Proposed Intervenors conflate these two injuries throughout their argument, making it unclear whether they believe they are distinct or whether one simply contributes to the other. The result is the same regardless.

it is not enough to allege "an indirect 'pocketbook' harm," or that an organization's efforts are made "*more costly* by requiring it to spend 'extra time and money' on those efforts." *NAACP*, 105 F.4th at 904–05 (citation omitted). Instead, "[t]here must be something more," which can include a showing "that the conduct challenged in the suit interfered with the organization's 'core business activities.'" *Fair Hous. Ctr.*, 124 F.4th at 992–93 (quoting *All. for Hippocratic Med.*, 602 U.S. at 395). The Proposed Intervenors assert that is precisely what is happening here, but that is not so.

In support of their argument, the Proposed Intervenors point to *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982). In that case, an organizational plaintiff called HOME "operated a housing counseling service" and engaged in issue-advocacy. *All. for Hippocratic Med.*, 602 U.S. at 395 (citing *Havens*, 455 U.S. at 368). HOME sued Havens Realty, an owner of apartment complexes, under the Fair Housing Act alleging that Havens engaged in racial steering by providing HOME's black employees false information about apartment availability. *Id.* (citing *Havens*, 455 U.S. at 366 and n.1, 368). HOME ultimately had standing because "Havens's actions directly affected and interfered with HOME's core business activities—not dissimilar to a retailer who sues a manufacturer for selling defective goods to the retailer." *Id.*

*Havens* was an "unusual case" that the United States Supreme Court "has been careful not to extend" the holding of beyond its context. *Id.* at 396. This alone counsels strongly against the extension of *Havens*-style reasoning into territory that has not otherwise been approved of by binding decisions of higher courts. But even

9

on top of that, there are at least two points of distinction that make *Havens* inapposite here.

First, the plaintiff organization in *Havens* sought monetary damages for past injuries, which is "a classic basis for standing." *Fair Elections Ohio v. Husted*, 770 F.3d 456, 460 n.1 (6th Cir. 2014). The Proposed Intervenors obviously are not seeking damages here.

Second, the basis for the plaintiff organization's damages claim in *Havens* was "a distinct and palpable injury to a broad legal right intrinsic to the organization's activities." *Id.* More specifically, the plaintiff organization itself had a right under the Fair Housing Act to receive certain truthful information, and it alleged the defendants had violated that right by providing it with untruthful information. *Id.* By providing untruthful information, the defendants had a direct negative impact on the plaintiff organization's business and caused it damages. *Id.* As explained above, this was analogous to a situation where a retailer contends that a manufacturer has provided it with defective goods. *All. for Hippocratic Med.*, 602 U.S. at 395. It was not a situation where the defendant did something that merely made it more difficult in the abstract for the plaintiff organization to conduct its business. The alleged injuries by the Proposed Intervenors, however, are more closely akin to the latter situation. Unlike the plaintiff organization in *Havens*, they do not allege the provision of false information that hinders their business activities. *See Carroll Indep. Sch. Dist.*, 2025 WL 1782571, at *6. Nor do they allege any other kind of injury that is similar to the provision of defective goods.

Nevertheless, A Better Balance states that the 2024 Rule's vacatur perceptibly "impairs [its] counseling service—an activity core to [its] mission." [Dkt. 218 at 7]. And The Victim Rights Law Center states that the 2024 Rule's vacatur and reversion to the 2020 Rule "are impairing [its] ability to provide legal assistance to student survivors," in part because the reversion has led to a decrease in demand for its services. [Dkt. 164-1 at 12–13]. But neither adequately demonstrates the kind of direct interference required for Article III standing in this context.

Begin with A Better Balance. The vacatur of the 2024 Rule and return to the 2020 Rule does not perceptibly impair its ability to carry out its mission; nothing in the 2020 Rule has any direct negative effect on A Better Balance's ability to advocate, counsel, or operate its helpline. Even so, A Better Balance contends that it will have to spend more time and resources on each person seeking its services, thereby making counseling "harder." [Dkt. 218 at 15–16]. But the key in *Havens* was not simply that Havens made HOME's job harder by providing inaccurate information, it is that Havens's untruths prevented HOME from doing its job by invading HOME's *own* right to receive accurate information. The 2020 Rule does no such thing.

In fact, what A Better Balance complains of seems to *further* its mission, not impair it. After all, A Better Balance exists to counsel and advise clients, and it is complaining that the 2024 Rule's vacatur will require it to do more counseling and advising. Thus, A Better Balance will end up doing *more* of its core mission. It is impossible to see how doing more of an activity "core" to its mission is somehow a hindrance to that mission. A Better Balance is thus unlike the plaintiff organization

11

in *Havens* that was prevented from providing its services because of the provision of false information.

The Victim Rights Law Center takes a different angle. Rather than relying solely on the argument that the 2024 Rule's vacatur and reversion to the 2020 Rule will impair its mission by requiring it to spend more time and resources counseling its clients, the Victim Rights Law Center also argues that the vacatur is impairing its mission by reducing the number of individuals who seek its services. [Dkt. 164-1 at 13; Dkt. 217 at 5]. It also focuses on the alleged adverse impact the 2020 Rule is having on its clients. [Dkt. 164-1 at 13–14].

The impact that the vacatur of the 2024 Rule and the reversion to the 2020 Rule will have on the Victim Rights Law Center's clients is irrelevant to whether the Victim Rights Law Center itself has first-party organizational standing. It simply has no bearing on the Victim Rights Law Center's ability to pursue its mission. It is ultimately still able to provide the representation it exists to provide.

And the alleged reduction in demand for its services likewise does not directly impair its ability to pursue its mission. Even if there is a decrease in demand for its services, the Victim Rights Law Center remains just as capable under the 2020 Rule of offering legal representation to victims that actually seek its services as it was under the 2024 Rule. The Victim Rights Law Center does not have a legal interest in serving any particular volume of clients. The 2024 Rule's vacatur merely affects the regulatory landscape in which services are offered; it does not directly impact the

Victim Rights Law Center's ability to pursue its mission of providing legal representation to victims.

The Victim Rights Law Center, however, claims that *Diamond Alternative Energy, LLC v. EPA*, 606 U.S. 100 (2025), supports the proposition that the alleged reduction in demand for its services is enough for Article III standing.[4] *Diamond Alternative Energy* involved a challenge to the EPA's approval of "California regulations requiring automakers to alter their fleets of new vehicles" by manufacturing "more electric vehicles and fewer gasoline-powered vehicles." *Id.* at 104. The challengers were "[p]roducers of gasoline and other liquid fuels." *Id.* The D.C. Circuit held that the fuel producers lacked Article III standing. *Id.* at 109. The Supreme Court reversed that decision, holding that "the decrease in purchases of gasoline and other liquid fuels resulting from the California regulations hurts their bottom line," *id.* at 113–14, and "[t]hose monetary costs 'are of course an injury,'" *id.* at 114 (quoting *United States v. Texas*, 599 U.S. 670, 676 (2023)). The Victim Rights Law Center interprets this holding to mean that any alleged reduction in demand for services is enough to establish Article III standing. Not so. *Diamond Alternative Energy* is distinguishable for at least two reasons.

First, the present case does not involve a direct pocketbook injury. That is, unlike the fuel producers in *Diamond Alternative Energy*, the Victim Rights Law

---

[4] The Victim Rights Law Center also relies on *National Credit Union Administration v. First National Bank & Trust Co.*, 522 U.S. 479 (1998), for this proposition. But *National Credit Union Administration* was about prudential standing under the Administrative Procedure Act, not Article III standing. *See id.* at 488.

Center does not contend that it will suffer harm in the form of lost revenue or other monetary losses.

Second, even setting that aside, the alleged injury in this case suffers from causation and redressability problems that were not present in *Diamond Alternative Energy*. In that case, the Supreme Court reiterated the well-established rule that "Courts must distinguish the 'predictable' from the 'speculative' effects of government action or judicial relief on third parties." *Id.* at 112 (quoting *All. for Hippocratic Med.*, 602 U.S. at 383). Thus, to find standing based on an anticipated reduction in demand, "a court must conclude that 'third parties will likely react to the government regulation (or judicial relief) in predictable ways' that will likely cause (or redress) the plaintiff's injury." *Id.* (internal quotations omitted) (quoting *All. for Hippocratic Med.*, 602 U.S. at 383). In *Diamond Alternative Energy*, the California regulations were *likely* to cause injuries to the fuel producers, *see id.* at 116, and it was "sufficiently 'predictable' that invalidating California's regulations would likely redress the fuel producers' injury," *id.* at 120 (quoting *All. for Hippocratic Med.*, 602 U.S. at 383). But in this case, the Victim Rights Law Center has not demonstrated that the reversion to the 2020 Rule is likely to cause a reduction in demand for its services, nor has it demonstrated that reinstating the 2024 Rule would likely redress any alleged reduction in demand. To the contrary, the effect on the demand for the Victim Rights Law Center's services is speculative. In other words, the causation and redressability elements of standing would be missing even if the Victim Rights Law Center could establish an injury in fact—which it cannot.

14

Of course, the Victim Rights Law Center tries to prove otherwise by asserting that "[i]n just the first six weeks after this Court's decision, VRLC received 41% fewer requests for legal assistance compared to the first six weeks after the 2024 Rule became effective." [Dkt. 164-1 at 13]. But that raises more questions than it answers. It says nothing about the overall long-term demand for the Victim Rights Law Center's services. It also does not explain whether the short-term reduction in requests is solely caused by reductions in requests for Title IX-related services, or whether the demand for Title IX-related services has remained the same and the demand for other services has reduced. Moreover, there is no indication that the alleged reduction in requests has any causal connection to the vacatur of the 2024 Rule and the reversion to the 2020 Rule, or that the alleged reduction would be alleviated by a successful appeal of this Court's judgment. The demand for legal services is affected by a multitude of factors, like new competitors, changing consumer preferences, and changing perceptions of a legal services provider. In other words, the Victim Rights Law Center's purported harm "depends on the unfettered choices made by independent actors not before the court[] and whose exercise of broad and legitimate discretion the court[] cannot presume either to control or to predict." *Lujan*, 504 U.S. at 562. This means that the effect on the demand for the Victim Rights Law Center's services is speculative, which precludes a finding of standing here. *See All. for Hippocratic Med.*, 602 U.S. at 383 ("The causation requirement precludes speculative links—that is, where it is not sufficiently predictable how third parties would react to government action or cause downstream injury to plaintiffs.").

15

In short, the alleged injury in *Diamond Alternative Energy* was a likely and predictable result of the challenged regulations, and it likely would have been redressed by a successful challenge to those regulations. But here, the alleged injury is speculative, and even if it were to materialize, it might be caused by any number of phenomena other than the vacatur of the 2024 Rule and the reversion to the 2020 Rule. Moreover, there is no reason to believe that the alleged injury would be redressed by the reversal of this Court's judgment. These factors make the Victim Rights Law Center's situation materially different from that of the fuel producers in *Diamond Alternative Energy*.

One final word about redressability: The 2024 Rule has been vacated by at least one other court. *See Carroll Indep. Sch. Dist.*, 2025 WL 1782572. And the 2024 Rule is subject to other injunctions throughout the country. *See supra* n.1. Even if the Proposed Intervenors prevail in overturning this Court's vacatur of the 2024 Rule, it will remain just as vacated as it was the day before. To receive even partial redress, the Proposed Intervenors will need to string together a series of legal wins and ultimately receive appellate relief in multiple courts. This cannot be said to be likely.

The bottom line is that the Proposed Intervenors have not carried their burden of demonstrating that they have Article III standing. The vacatur of the 2024 Rule and reversion to the 2020 Rule does not limit the Proposed Intervenors' ability to counsel or provide legal representation to the communities they serve. That they must do so in a regulatory environment they do not prefer is not an injury. To accept the Proposed Intervenors' theory of standing would "mean that all the organizations

16

in America would have standing to challenge almost every federal policy" that affects them, provided they spend a single additional minute of time or a single client neglects their services in response to that policy. *See All. for Hippocratic Med.*, 602 U.S. at 395. Indeed, practically every law firm in the country would be converted into a standing-creation machine. That is, law firms nationwide would be able to successfully claim first-party organizational standing to challenge any change to a statute or regulation simply because it might affect how they provide legal services or the volume of their services demanded by consumers. That would plainly be inconsistent with existing standing doctrine.

The Proposed Intervenors have failed to satisfy the requirements for Article III standing, and so they cannot intervene.

### B. A Better Balance does not have standing based on a procedural injury.

One additional standing issue bears mentioning separately. A Better Balance suggests that it has standing based on a "procedural injury." [Dkt. 218 at 21]. It accuses the Federal Defendants of failing to appeal the vacatur of the 2024 Rule "so that [they] could void the Rule without the required notice-and-comment process." [*Id.* (quoting *Arizona v. City & County of San Francisco*, 596 U.S. 763, 766 (2022) (Roberts, J., concurring)]. According to A Better Balance, this deprives it "of critical procedural rights that protect its concrete interest in preserving the resources it must expend absent the Rule's pregnancy provision." [*Id.* (citing *Nat'l Infusion Ctr. Ass'n v. Becerra*, 116 F.4th 488, 503 (5th Cir. 2024))]. But A Better Balance is not excused from the requirements of Article III standing because of this allegation.

17

"[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing." *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009). Even when a procedural injury is alleged, "a litigant still must demonstrate 'that it has a concrete interest that is affected by the deprivation of the claimed right.'" *Mackinac Ctr. for Pub. Pol'y v. Cardona*, 102 F.4th 343, 356–57 (6th Cir. 2024). A Better Balance has not done so. *See Carroll Indep. Sch. Dist.*, 2025 WL 1782571, at *6 (holding that A Better Balance's alleged procedural injury did not give it standing to intervene).

## III. Conclusion

Because A Better Balance and the Victim Rights Law Center cannot establish the requisite elements for Article III standing, they cannot intervene in this action for the purpose of taking an appeal when the original parties do not desire to appeal. *See Grae*, 57 F.4th at 569. Thus, it is hereby **ORDERED** that:

1) A Better Balance's Motion to Intervene, [Dkt. 152], is **DENIED**; and

2) The Victim Rights Law Center's Motion to Intervene, [Dkt. 164], is **DENIED**.

Signed this 25th day of February, 2026.



S. Chad Meredith, District Judge
United States District Court
Eastern District of Kentucky