No. 25-10651

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

Carroll Independent School District,
Plaintiff-Appellee,

v.

United States Department of Education; Linda McMahon, Secretary, U.S. Department of Education; Kimberly Richey, in her official capacity as Assistant Secretary for Civil Rights at the United States Department of Education; United States Department of Justice; Todd Blanche, Acting U.S. Attorney General*; Harmeet Dhillon, in her official capacity as Assistant Attorney General for the Civil Rights Division of the United States Department of Justice, Defendants-Appellees,

*and*

Victim Rights Law Center*; A Better Balance,
Movants-Appellants

On Appeal from the United States District Court
for the Northern District of Texas
Case No. 4:24-cv-00461-O
The Honorable Reed O'Connor

**APPELLANT VICTIM RIGHTS LAW CENTER'S REPLY BRIEF**

Andrea Dobson-Forsee
Ellen Eardley
MEHRI & SKALET PLLC
2000 K Street NW, Suite 325
Washington, DC 20006
Telephone: (202) 822-5100
aforsee@findjustice.com
eeardley@findjustice.com

Shiwali Patel
Rachel Smith
Elizabeth Tang
Elizabeth E. Theran
NATIONAL WOMEN'S LAW CENTER
1350 I Street NW, Suite 700
Washington, DC 20005
Telephone: (202) 588-5180
spatel@nwlc.org
rsmith@nwlc.org
etang@nwlc.org
etheran@nwlc.org

*Attorneys for Proposed Intervenor-Defendant VRLC*

*The caption reflects that Jane Doe, a proposed intervenor-defendant, is no longer participating in this matter as her claim is now moot; and that as of filing, Todd Blanche is Acting U.S. Attorney General.*

# TABLE OF CONTENTS

Introduction ............................................................................................................1

Argument.................................................................................................................2

   I. VRLC has standing because the 2024 Rule's vacatur impairs its ability to
continue core services. ......................................................................................2

     A.  The 2024 Rule's vacatur injures VRLC. ...................................................2

     B.  The vacatur is causing VRLC's injuries, and narrowing it will redress
them. ......................................................................................................11

   II.  The Court must permit VRLC to intervene, mandatorily or permissively....15

     A.  VRLC is entitled to mandatory intervention.................................................16

       1.VRLC timely moved to intervene when it became clear Defendants would
not appeal, leaving its interests unrepresented. . ...................................16

       2. Denying VRLC intervention would impair its legal interests...................18

     B.  Alternatively, VRLC should be permitted to intervene.............................19

   III.  The definition of sex discrimination and de minimis harm rule, Sections
106.10 and 106.31(a)(2), should be severed, leaving the remainder of the 2024
Rule in effect. . ...............................................................................................19

     A.  The definition of sex discrimination and de minimis rule are severable and
should be severed. ..................................................................................19

     B.  The definition of hostile-environment harassment and remaining
provisions Carroll challenges are lawful. ...............................................21

       1. The 2024 Rule's definition of hostile-environment harassment is
lawful. . ..................................................................................................22

       2. The other 2024 Rule provisions Carroll challenged are lawful. ...............27

Conclusion ............................................................................................................29

Certificate of Compliance .....................................................................................31

Certificate of Service ...................................................................................32

# TABLE OF AUTHORITIES

**Cases**                                                                                                      **Page(s)**

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)..................................................................................14

*Ass'n for Rtd. Citizens of Dallas v. Dallas Cnty. Mental Health &*
  *Mental Rtd. Ctr. Bd. of Trs.*,
  19 F.3d 241 (5th Cir. 1994) ......................................................................12

*Bell v. Itawamba Cnty. Sch. Bd.*,
  799 F.3d 379 (5th Cir. 2015) (en banc) ...................................................25

*Bost v. Illinois State Bd. of Elections*,
  146 S. Ct. 513 (2026)..................................................................................5

*Cameron v. EMW Women's Surgical Ctr., P.S.C.*,
  595 U.S. 267 (2022) .............................................................................17, 18

*Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*,
  98 F.4th 220 (5th Cir. 2024) ......................................................................3

*Cohen v. San Bernardino Valley Coll.*,
  92 F.3d 968 (9th Cir. 1996) ......................................................................23

*Crawford v. Hinds Cnty. Bd. of Supervisors*,
  1 F.4th 371 (5th Cir. 2021) .........................................................................9

*Dambrot v. Cent. Mich. Univ.*,
  55 F.3d 1177 (6th Cir. 1995) ....................................................................23

*Davis v. Monroe Cnty. Bd. of Educ.*,
  526 U.S. 629 (1999).......................................................................22, 24, 26

*Deep S. Ctr. for Env't Just. v. EPA*,
  138 F.4th 310 (5th Cir. 2025) ............................................................*passim*

*Dep't of Commerce v. New York*,
  588 U.S. 752 (2019)..................................................................................13

*Diamond Alternative Energy, LLC v. EPA*,
  606 U.S. 100 (2025)..............................................................................11, 15

*Edwards v. City of Houston,*
    78 F.3d 983 (5th Cir. 1996) ................................................................16

*Env't Tex. Citizen Lobby, Inc. v. ExxonMobil Corp.,*
    123 F.4th 309 (5th Cir. 2024) (Ho, J., in support of dismissing
    rehearing en banc as improvidently granted) ....................................14

*FDA v. All. for Hippocratic Med.,*
    602 U.S. 367 (2024).................................................................*passim*

*Fed. Election Comm'n v. Cruz,*
    596 U.S. 289 (2022)...............................................................................10

*Guenther v. BP Ret. Accumulation Plan,*
    50 F.4th 536 (5th Cir. 2022) ................................................................17

*Habeas Corpus Res. Ctr. v. U.S. Dep't of Just.,*
    816 F.3d 1241 (9th Cir. 2016) ................................................................9

*Harris v. Forklift Sys., Inc.,*
    510 U.S. 17 (1993)..................................................................22, 23, 26

*Havens Realty Corp. v. Coleman,*
    455 U.S. 363 (1982)...............................................................2, 5, 6, 7

*La. Fair Hous. Action Ctr., Inc. v. Azalea Garden Props., L.L.C.,*
    82 F.4th 345 (5th Cir. 2023) (Ho, J., concurring)....................3, 7, 11

*La Union Del Pueblo Entero v. Abbott,*
    151 F.4th 273 (5th Cir. 2025) ..........................................................8, 12

*La Union Del Pueblo Entero v. Abbott,*
    29 F.4th 299 (5th Cir. 2022) ................................................................19

*Louisiana v. Burgum,*
    132 F.4th 918 (5th Cir. 2025) ..............................................................17

*Mahanoy Area Sch. Dist. v. B.L.,*
    594 U.S. 180 (2021)..........................................................................23, 25

*Mil.-Veterans Advoc. v. Sec'y of Veterans Affs.,*
    130 F.4th 965 (Fed. Cir. 2025) .......................................................3, 8, 9

*Murthy v. Missouri,*
603 U.S. 43 (2024)................................................................14

*Nairne v. Landry,*
151 F.4th 666 (5th Cir. 2025) ......................................*passim*

*Nat'l Credit Union Admin. v. First Nat. Bank & Tr. Co.,*
522 U.S. 479 (1998)..............................................................7

*OCA-Greater Houston v. Texas,*
867 F.3d 604 (5th Cir. 2017) ................................................4

*Piggee v. Carl Sandburg Coll.,*
464 F.3d 667 (7th Cir. 2006) ..............................................24

*R.A.V. v. City of St. Paul,*
505 U.S. 377 (1992)........................................................22, 23

*Republican Nat'l Comm. v. N.C. State Bd. of Elections,*
120 F.4th 390 (4th Cir. 2024) ................................................6

*Rollins v. Home Depot USA,*
8 F.4th 393 (5th Cir. 2021) ............................................19, 21

*S. Tex. Env't Just. Network v. Tex. Comm'n on Env't Quality,*
165 F.4th 356 (5th Cir. 2026) ........................................2, 11, 15

*S.C. State Conf. of the NAACP v. S.C. Dep't of Juv. Just.,*
165 F.4th 858, 863 (4th Cir. 2026), *reh'g en banc granted*, No. 25-
1032, 2026 WL 710241 (4th Cir. Mar. 13, 2026) ................................13

*Saxe v. State Coll. Area Sch. Dist.,*
240 F.3d 200 (3d Cir. 2001) ................................................24

*Speech First, Inc. v. Cartwright,*
32 F.4th 1110 (11th Cir. 2022). ..........................................25

*Spokeo, Inc. v. Robins,*
578 U.S. 330 (2016)............................................................6

*Summers v. Earth Island Inst.,*
555 U.S. 488 (2009)............................................................9

*Tenn. Conf. of NAACP v. Lee*,
105 F.4th 888 (6th Cir. 2024) ...................................................................12

*Tennessee v. Cardona*,
737 F. Supp. 3d 510 (E.D. Ky. 2024) .......................................................26

*Tennessee v. McMahon* (*McMahon*),
No. 2:24-cv-00072, 2026 WL 524773 (E.D. Ky. Feb. 25, 2026).............2, 12, 15

*Tex. Trib. v. Caldwell Cnty.*,
121 F.4th 520 (5th Cir. 2024) .....................................................................5

*Texas v. United States*,
126 F.4th 392 (5th Cir. 2025) ...............................................................19, 20

*Texas v. United States*,
691 F. Supp. 3d 763 (S.D. Tex. 2023).......................................................20

*United Airlines, Inc. v. McDonald*,
432 U.S. 385 (1977)...............................................................................16, 18

*United States v. Nat'l Treasury Emps. Union*,
513 U.S. 454 (1995)...................................................................................24

*United States v. Texas*,
599 U.S. 670 (2023)...................................................................................10

*Vote.Org v. Callanen*,
89 F.4th 459 (5th Cir. 2023) .....................................................................11

*VRLC v. Cardona*,
552 F. Supp. 3d 104 (D. Mass. 2021).........................................................8

*Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*,
834 F.3d 562 (5th Cir. 2016) ....................................................................18

**Statutes**

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.........22, 23, 26

Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 .......................22, 27

Title IX of the Education Amendments of 1972, 20 U.S.C.
§§ 1681 et seq. ....................................................................................*passim*

Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d et seq. ................22, 27

**Other Authorities**

34 C.F.R. § 106.2 ...........................................................................................26

34 C.F.R. § 106.10 ..............................................................................19, 20, 29

34 C.F.R. § 106.30(a).....................................................................................28

34 C.F.R. § 106.31 ..........................................................................................21

34 C.F.R. § 106.31(a)(2) ......................................................................19, 20, 21, 29

34 C.F.R. § 106.42 ..........................................................................................23

34 C.F.R. § 106.44(a).....................................................................................25

34 C.F.R. § 106.44(a)(1).................................................................................27

34 C.F.R. § 106.44(f)(1) .................................................................................27

34 C.F.R. § 106.44(f)(1)(v)(A)(1)-(8) ...........................................................28

34 C.F.R. § 106.44(f)(1)(v)(B) .......................................................................27

34 C.F.R. § 106.45(b)(5) ................................................................................28

85 Fed. Reg. 30,026 (May 19, 2020) .......................................................*passim*

89 Fed. Reg. 33,474 (Apr. 29, 2024) .......................................................*passim*

Fed. R. Civ. P. 24 .............................................................................................1

Fed. R. Civ. P 24(a).........................................................................................16

U.S. Const. amend. I. ......................................................................................23

## INTRODUCTION

Carroll Independent School District argued it had standing in this case because, among other things, it would have to "spend time and resources" to adapt to the 2024 Title IX Rule. ROA.57-58; Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance, 89 Fed. Reg. 33,474 (Apr. 29, 2024). Now it argues those *same* factors don't give Victim Rights Law Center (VRLC) standing.

VRLC has standing because the 2024 Rule's vacatur and the consequent reversion to the 2020 Rule require it to spend increased time and resources and injure its pre-existing core activities of helping students who have been assaulted and harassed stay in school. *See* ROA.5034-46; Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance, 85 Fed. Reg. 30,026 (May 19, 2020). It also meets the requirements for mandatory intervention—timeliness, legal interest, impairment of that interest, and inadequate representation. Fed. R. Civ. P. 24(a). Defendants do not dispute that VRLC meets every factor, and while Carroll quarrels with some, it does not dispute that VRLC's interests are unrepresented now that Defendants have abruptly ceased defending the Rule.

On the merits, VRLC seeks to defend portions of the 2024 Rule that never should have been vacated, as they were lawful and reasonable. The district court

1

erred in failing to heed the Rule's severability provisions and this Court's severability precedent.

## ARGUMENT

**I.** **VRLC has standing because the 2024 Rule's vacatur impairs its ability to continue core services.**

VRLC has standing because the 2024 Rule's vacatur and the consequent reversion to the 2020 Rule "'perceptibly impair'" VRLC's "core business activities" of helping survivors of assault and harassment reengage in school: they make it more time- and resource-intensive to continue offering its services and chill survivors from obtaining those services. *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 395 (2024) (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)). This directly resulted from the 2024 Rule's vacatur, so a decision narrowing the vacatur would redress that harm. *S. Tex. Env't Just. Network v. Tex. Comm'n on Env't Quality*, 165 F.4th 356, 367 (5th Cir. 2026). The district court erred by failing to apply this binding precedent, as did the court in *Tennessee v. McMahon* (*McMahon*), No. 2:24-cv-00072, 2026 WL 524773, at *8 (E.D. Ky. Feb. 25, 2026), which also denied VRLC intervention by applying standards unmoored from this Court's and the Supreme Court's precedents. *See* ECF No. 181.

### A. The 2024 Rule's vacatur injures VRLC.

Nonprofits can establish standing by "showing 'impair[ment]' to the organization's 'activities.'" Carroll Br. 23 (quoting *Havens*, 455 U.S. at 379); *see*

2

*also Alliance*, 602 U.S. at 395 (conduct that "perceptibly impair[s]" an organization's "ability to provide counseling and referral services" or other "core business activities" injures it); *La. Fair Hous. Action Ctr., Inc. v. Azalea Garden Props., L.L.C.* (*LaFHAC*)*,* 82 F.4th 345, 358 (5th Cir. 2023) (Ho, J., concurring) (organization may be injured when defendant "has made it more difficult to conduct its operations"). This impairment can arise from various common cognizable harms: A defendant's conduct can make the organization's preexisting services more time- and resource-intensive. *See Nairne v. Landry*, 151 F.4th 666, 681 (5th Cir. 2025) (government required organization to spend "additional time and resources" to conduct core activity). Or the defendant can prevent the organization from serving clients. *See Mil.-Veterans Advoc. v. Sec'y of Veterans Affs.*, 130 F.4th 965, 970 (Fed. Cir. 2025) (government "caus[ed] [organization's] attorneys to lose veteran clients").

Carroll rightly acknowledges that a "pocketbook injury caused by the defendant's allegedly unlawful acts" can confer organizational standing. Carroll Br. 28. Such "costs need not be large." *Id*. 25. For example, no party disputes that costs from "preparatory analysis, staff training, and reviews of existing … protocols" to ensure compliance with new regulations are "concrete injuries." *Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*, 98 F.4th 220, 234 (5th Cir. 2024). Indeed, Carroll's *own* standing is premised in part on "hav[ing] to spend

time and resources" revising policies and training staff regarding the 2024 Rule. ROA.57.

Organizations like VRLC experience a pocketbook injury when the defendant makes it more resource-intensive to continue their core services, "detract[ing]" from their ability to offer them. *Deep S. Ctr. for Env't Just. v. EPA*, 138 F.4th 310, 320 (5th Cir. 2025). Thus, this Court held, voting-rights organizations had standing to challenge action that "interfered directly with [their] core operations—namely, advancing Black political participation." *Nairne*, 151 F.4th at 682. This required them to "launch[] new accountability initiatives, reallocate[] staff, and devote[] additional time and resources to convincing Black voters that their votes still mattered." *Id*. at 681.

*Nairne* is binding. It is consistent with *Alliance* because the *Nairne* plaintiffs did not simply "expend[ ] money to express disagreement" with the defendants; "[t]hey were forced to" spend resources "to mitigate the effects of the" defendants' actions on their programs. *Id*. at 682 (discussing *Alliance*, 602 U.S. at 394). *Nairne* also follows binding pre-*Alliance* precedent where this Court found standing because a law required an organization to spend "'additional time and effort'" to continue its "normal outreach activities." *Id*. at 682 (quoting *OCA-Greater Houston v. Texas*, 867 F.3d 604, 610 (5th Cir. 2017)). And *Nairne* is consistent with this Court's post-*Alliance* precedent finding organizational standing where a

policy impaired an organization's ability to achieve its mission to "bail[ ] people out of jail" and "support[ ] community members [who] are overrepresented in the criminal legal system." *Tex. Trib. v. Caldwell Cnty.,* 121 F.4th 520, 527 (5th Cir. 2024).

Defendants attempt to undermine *Nairne* by invoking a post-*Texas Tribune* case, *Deep South*, that said *Alliance* "limited *Havens* to its facts" and so, they argue, foreclosed *Nairne*'s holding. 138 F.4th at 319. That language is dicta because it was irrelevant to *Deep South*'s holding—"[e]ven before *Alliance*, Deep South's expenditures would not have sufficed to support Article III standing." *Id.* at 318. In any event, *Havens*'s "facts" must mean impairment of core activities because of *Texas Tribune*'s earlier holding—consistent with *Nairne*—finding standing where a policy impaired an organization's ability to "bail[ ] people out of jail" and "support[ ] community members." *Tex. Trib.*, 121 F.4th at 527. Under the rule of orderliness, Defendants' Br. 18-19, *Texas Tribune*, not *Deep South*, controls.

Recent Supreme Court precedent and organizational-standing cases in other circuits also reinforce *Nairne*'s holding that a law that forces an organization to expend more resources to continue its core activities gives rise to standing. As Defendants point out, the Supreme Court just "acknowledged that election rules that 'require [a candidate] to expend additional resources' can support standing."

5

Defendants' Br. 21 n.7 (quoting *Bost v. Illinois State Bd. of Elections*, 146 S. Ct. 513, 519 (2026)).[1] Similarly, the Fourth Circuit recently held the Republican National Committee had standing where a state's "inaction … in remedying … alleged defects in the voter rolls" forced it to remediate harm to its mission by "divert[ing] resources into combatting election fraud and monitoring various aspects of the upcoming election in North Carolina." *Republican Nat'l Comm. v. N.C. State Bd. of Elections*, 120 F.4th 390, 397 (4th Cir. 2024).

The parties miscast *RNC*—and *Havens*—as informational-injury cases. Neither were. The RNC's injury was harm to its electioneering and lost resources from alleged election-oversight failures. *Id*. at 396-97. The *Havens* plaintiff's was harm to its "ability to provide counseling and referral services" from the defendant's "policy and practice of unlawful racial steering," the only non-time-barred instance of which happened to a community member—not the organization itself, whose employees' false-information claims were time-barred. 455 U.S. at 379-81.

---

[1] Defendants try to distinguish *Bost* by arguing, without explanation, that VRLC isn't suffering particularized harm. But VRLC is suffering particularized injuries: harms to *its* programs that cost *it* staff time and money. ROA.5035-47; *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (particularized injury must be "personal").

VRLC's injury is similar to the *Havens*, *Nairne*, and *RNC* organizations'. Reversion to the 2020 Rule requires VRLC to spend "increased time and resources … to advise each client," including:

- at least quadruple the time to prepare for live hearings with essentially no-holds-barred cross-examination,

-  "more time obtaining additional evidence and preparing more supporting witnesses in order to meet the higher threshold demanded by the" 2020 Rule's outlier "clear and convincing" standard, and

- more time petitioning Title IX coordinators not to pursue complaints initiated against survivors' wishes.

ROA.5035-47. This "reduc[es] the overall number of survivors VRLC can represent," ROA.5036—much like Carroll's having to spend time and resources revising policies and training staff. VRLC's standing is no more remarkable than Carroll's; after all, Carroll was not unique among the nation's thousands of school districts in expending resources to adapt to the 2024 Rule. *See* ROA.57-58.

Next, if an organization's core activities include serving clients, it has standing where the defendant causes it "'concrete and demonstrable' injury in terms of fewer clients referred or prospective [clients] reached." *LaFHAC,* 82 F.4th at 355 (quoting *Havens*, 455 U.S. at 379). Chilling clients from seeking its services "detract[s]" from its "routine activities," harming its ability to carry out its mission.

*Deep South*, 138 F.4th at 320. As Defendants concede, "lost business is sometimes a cognizable injury under Article III." Defendants' Br. 30; *see also Nat'l Credit Union Admin. v. First Nat. Bank & Tr. Co.*, 522 U.S. 479, 488 n.4 (1998) (banks "suffered an injury in fact" of fewer customers).

Of course, those clients need not be paying if the organization's core activity is offering free services. Thus, an organization that "litigates, legislates, and educates on behalf of members of the military and military veterans" had standing to challenge a rule that created administrative hurdles, "frustrat[ing] its goal of representing veterans by … causing its attorneys to lose veteran clients." *Mil.-Veterans Advoc.*, 130 F.4th at 970.[2] As *Military-Veterans* shows, Article III does not, as Defendants suggest, arbitrarily exclude legal organizations from standing. Indeed, VRLC has previously established standing because of the 2020 Rule's chilling effect on its clients. *VRLC v. Cardona*, 552 F. Supp. 3d 104, 126 (D. Mass. 2021) (holding "unwillingness and hesitancy from student victims to continue their Title IX complaints because of the Final Rule's cross-examination provisions" injures VRLC).

---

[2] Carroll suggests *Military-Veterans* is inapposite because the rule there directly regulated the organization. But being "directly regulate[d] … does not *ipso facto* establish injury"; an organization must "show an actual or imminent injury caused by that regulation," and that organization—like here—established injury by showing loss of clients. *La Union Del Pueblo Entero v. Abbott*, 151 F.4th 273, 287 (5th Cir. 2025) (quotation omitted).

VRLC is again experiencing chilled client demand. *See* ROA.5035-36. As VRLC's Executive Director explained, "[b]ecause the reinstated 2020 Rule imposes procedures that are unfair and hostile to student survivors, VRLC clients are already more hesitant to continue their pending Title IX complaints that were initiated under the 2024 Rule or to file new Title IX complaints." ROA.5035. The Rule also bars many VRLC clients from filing administrative complaints. *Id*. The resulting chill is dramatic—a 41% drop-off in requests for assistance post-vacatur.[3] *Id*. This is no fluke: it is consistent with VRLC's *four years* of experience when the 2020 Rule previously applied. ROA.5036. Such "[p]ast wrongs [are] evidence" of likely future injury. *Crawford v. Hinds Cnty. Bd. of Supervisors*, 1 F.4th 371, 375 (5th Cir. 2021).

Of course, if a rule prevented sexual misconduct, meaning fewer survivors needed VRLC's services, that would not "impair" its mission of helping survivors stay in school. *Alliance*, 602 U.S. at 395; ROA.5034. But the opposite is happening: survivors are telling VRLC they fear the 2020 Rule's hostile provisions and so fear using VRLC's services to assert their rights, *see* ROA.5044, or the Rule

---

[3] Because VRLC has first-party, not third-party, standing, it need not name these students because it isn't asserting their rights. *Cf. Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009) (requiring naming members in third-party-standing context). VRLC sufficiently detailed how the vacatur affects *it*, *see Mil.-Veterans Advoc.*, 130 F.4th at 970, including in specific cases. ROA.5041-44, 5047-48.

is outright barring their complaints. ROA.5035-36. The 2020 Rule is preventing VRLC from serving students who need help—its core mission.

Defendants also argue that lawyers are not injured when they must change legal strategy. Defendants' Br. 28 (citing *Habeas Corpus Res. Ctr. v. U.S. Dep't of Just.*, 816 F.3d 1241, 1249 (9th Cir. 2016)). That's true but irrelevant. VRLC is not injured because it had to change strategy. It is injured because the vacatur requires it to spend more resources—just as Carroll claimed the 2024 Rule injured it—and chills clients from using its services.

Next, monetary harm and loss of clients are injuries even if "willingly incurred." *Fed. Election Comm'n v. Cruz*, 596 U.S. 289, 297 (2022) ("pocketbook harm" was "of course" injury even where "knowingly triggered"). But of course, VRLC is not *willingly* incurring them; it's incurring them because it has to unless it abandons its mission of assisting student survivors. And "shutting down would be its own injury-in-fact." Carroll Br. 27.

Finally, that VRLC's harms are downstream injuries makes them no less injurious. *See Alliance*, 602 U.S. at 384 (reaffirming "variety of familiar circumstances where government regulation" may injure "unregulated plaintiff"). Defendants are wrong that "downstream, indirect financial injuries are not cognizable"—and the case they cite merely held courts can't order the Executive

Branch to make more arrests. Defendants' Br. 30; *United States v. Texas*, 599 U.S. 670, 676-77 (2023).

### B. The vacatur is causing VRLC's injuries, and narrowing it will redress them.

Traceability is no problem because the 2024 Rule's vacatur and consequent reversion to the 2020 Rule predictably caused VRLC's monetary losses and its loss of clients; no action by VRLC or third parties independently caused them. The parties rightly aren't contesting redressability.

Causation requires only "a predictable link between [the challenged conduct] and the [plaintiff's] alleged injuries." *S. Tex. Env't Just.*, 165 F.4th at 367. VRLC's injuries were more than predictable: the 2020 Rule anticipated fewer Title IX investigations. *See* 85 Fed. Reg. at 30,566. Because reducing investigations—by making it more difficult or impossible for survivors to bring cases—was a "point of the [2020] regulations," their revival is automatically harming VRLC. *Diamond Alternative Energy, LLC v. EPA*, 606 U.S. 100, 114 (2025).

Of course, causation wouldn't exist if VRLC's harms were self-inflicted. *Vote.Org v. Callanen*, 89 F.4th 459, 471 (5th Cir. 2023) (holding "self-inflicted injuries, *i.e.*, those that are not fairly traceable to the actions of the defendant," not cognizable) (quotations omitted). Carroll is right that "[o]ne way to distinguish between a voluntary response and a cognizable impairment is to ask whether 'the

plaintiff will be injured if it does nothing.'" Carroll Br. 23 (citing *LaFHAC*, 82 F.4th at 357 (Ho, J., concurring)).

VRLC's injury is cognizable because if it did nothing, the vacatur and reversion to the 2020 Rule would continue making its preexisting services more resource-intensive and preventing clients from using them. *See* ROA.5035-51; *LaFHAC*, 82 F.4th at 357 (Ho, J., concurring) ("[I]f a defendant's practices make it more difficult or costly for an organization to conduct its operations, then the organization may well have standing.").[4] VRLC, like gas- or book-sellers, has standing to challenge actions causing it to lose resources. VRLC Opening Br. 17-19.

The parties lean on cases where, by contrast, organizations voluntarily spent resources advocating against disfavored policies. In each, if the organization had done nothing, its "abstract social interests" might have suffered—but not its pre-existing services. *Alliance*, 602 U.S. at 394; *see also Deep South*, 138 F.4th at 318 (organization's "opposition to [defendant's] action" did not "confer standing"); *La*

---

[4] Carroll and the *McMahon* court mischaracterize *Alliance* as rejecting standing based on the defendant making an organization's "efforts more costly by requiring it to spend extra time and money on those efforts." Carroll Br. 23 (quoting *Tenn. Conf. of NAACP v. Lee*, 105 F.4th 888, 905 (6th Cir. 2024)); ECF No. 181 at 11. *NAACP* merely held "*Alliance* ... creates uncertainty over when a plaintiff's own choice to spend money can give it standing" and resolved the case on other grounds. 105 F.4th at 905.

*Union Del Pueblo Entero v. Abbott*, 151 F.4th 273, 287 (5th Cir. 2025) (same; organization "'expend[ed] resources' to educate" members about dispreferred laws); *Ass'n for Rtd. Citizens of Dallas v. Dallas Cnty. Mental Health & Mental Rtd. Ctr. Bd. of Trs.*, 19 F.3d 241, 244 (5th Cir. 1994) ("groups have no legally-protected interest in *not* expending their resources … at least where the only resources 'lost' are the legal costs of the particular advocacy lawsuit").[5]

Moreover, the parties' suggestion that organizations can only establish standing when directly regulated—not based on the "predictable effect of Government action on the decisions of third parties"—is baseless. *Dep't of Commerce v. New York*, 588 U.S. 752, 768 (2019) (causation established based on "predictable effect"); *see also Alliance*, 602 U.S. at 384 (reiterating "downstream or upstream economic injuries" can establish standing). *Alliance* and *Deep South* did hold the defendant must have "directly affected and interfered with [the plaintiff's] core business activities," but in context, this simply reaffirmed that the defendant must have caused the harm—the plaintiff can't have self-inflicted it. *Deep South*, 138 F.4th at 319 (quoting *Alliance*, 602 U.S. at 395). For example, the *Deep South* defendant did not cause the plaintiff's harms: the plaintiff voluntarily spent money to "advocate against" the defendant. 138 F.4th at 319. Contrast that

---

[5] The parties also cite *S.C. State Conf. of the NAACP v. S.C. Dep't of Juv. Just.*, but it is being reheard. 165 F.4th 858, 863 (4th Cir. 2026), *reh'g en banc granted*, No. 25-1032, 2026 WL 710241 (4th Cir. Mar. 13, 2026).

with *Nairne*, where the challenged laws "interfered directly with the [plaintiffs']
core operations," so "[t]hey were forced to reallocate staff and launch new
initiatives" to continue their core activities. 151 F.4th at 682. "The organizations
did not simply 'expend[ ] money to express disagreement,'" as in *Alliance* and
*Deep South*—and so did not self-inflict injury. *Id*. (quoting *Alliance*, 602 U.S. at
394).

Carroll responds by misrepresenting the record to manufacture concerns that
VRLC's injuries are speculative. Carroll Br. 20-22. But VRLC need not speculate
about what is depressing client demand: survivors are *telling* it they do not wish to
pursue complaints because of the 2020 Rule's unfair procedures. *See* ROA.5035.
And the 2024 Rule's vacatur and reversion to the 2020 Rule are "making it more
difficult and resource-intensive" for VRLC to continue helping survivors stay in
school. ROA.5051. Even if there were additional causes,[6] that would not defeat
traceability. *See Env't Tex. Citizen Lobby, Inc. v. ExxonMobil Corp*., 123 F.4th
309, 347-48 (5th Cir. 2024) (Ho, J., in support of dismissing rehearing en banc as
improvidently granted) (explaining "standing does not require a plaintiff to trace

---

[6] Unlike in *Murthy v. Missouri*, 603 U.S. 43, 57 (2024), the record contains none;
Carroll simply speculates about alternative explanations. And even if there were
alternative explanations, all that VRLC must show at this procedural posture of
summary judgment is that there is sufficient evidence for a jury to find causation—
as there is—not that its explanation is the only possible one. *Anderson v. Liberty
Lobby, Inc*., 477 U.S. 242, 249 (1986).

his injury … with scientific certainty"; "reasonable inference" is sufficient—so if two hunters negligently fire and one hits a bystander, bystander may establish causation as to both, given reasonable inference that one harmed him, avoiding absurd conclusion that neither did).

The parties, correctly, aren't disputing redressability. *See* VRLC Opening Br. 26-27. The *McMahon* court, in holding otherwise, ECF No. 181 at 16, overlooked that redressability only requires a party to show that relief "could *possibly* redress its injuries," as VRLC has shown. *S. Tex. Env't Just.*, 165 F.4th at 368. In requiring more certainty, the court puzzlingly cited *Diamond*, which found redressability for gas producers even though relief depended on "guesswork as to how independent decisionmakers (specifically, automakers and consumers) would respond to a court order invalidating the pre-emption waiver for California's emissions standards," including guessing about future demand for electric vehicles. 606 U.S. at 132 (Jackson, J., dissenting). By finding redressability because relief "would *likely* redress at least *some* of the fuel producers' monetary injuries," *Diamond* supports VRLC. *Id*. at 114 (emphasis added).

## II.     The Court must permit VRLC to intervene, mandatorily or permissively.

VRLC is entitled to intervene because it moved quickly after learning that its interests were suddenly unrepresented. Defendants don't dispute that VRLC is entitled to mandatory intervention and meets the permissive-intervention criteria.

And while Carroll quarrels with some intervention factors, no party disputes that VRLC's interests are now entirely unrepresented.

### A. VRLC is entitled to mandatory intervention.

Undisputedly, intervention must be allowed where a party meets Rule 24(a)'s requirements of timeliness, interest in the action, impairment of that interest, and inadequate representation. VRLC satisfies each.

### 1. VRLC timely moved to intervene when it became clear Defendants would not appeal, leaving its interests unrepresented.

The timeliness factors are: (1) how long the intervenor knew its interest "would no longer be protected"; (2) "prejudice caused by the applicants' delay" after learning their interest was unprotected; (3) prejudice to the applicant if intervention is denied; and (4) unusual circumstances. *Edwards v. City of Houston*, 78 F.3d 983, 1000, 1002 (5th Cir. 1996). All factors demonstrate timeliness—and no party disputes (3), that VRLC will be prejudiced if denied intervention.

First, VRLC knew its interests were unprotected for just three weeks before moving to intervene—making its motion more than timely. VRLC Opening Br. 29-30. The clock began running when "'it became clear'" that VRLC's interests "'would no longer be protected' by the Department," namely, when Defendants announced they would not appeal. Carroll Br. 37 (quoting *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 394 (1977)). When the "need to seek intervention did

16

not arise until the [defendant] ceased defending the" relevant law, "the timeliness of" the intervention "motion should be assessed in relation to that point in time." *Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 595 U.S. 267, 280 (2022).

Indeed, VRLC could not have intervened much earlier. Before the Department announced it wasn't appealing, "two presumptions of adequate representation" would have applied: (1) VRLC had "the same ultimate objective as" Defendants, namely "to uphold the Rule," so it would have had to show "adversity of interest, collusion, or nonfeasance" by Defendants; and (2) an "existing party [wa]s a governmental body" and its "interest" was not "in fact different from" VRLC's. *Louisiana v. Burgum*, 132 F.4th 918, 922-23 (5th Cir. 2025) (quotations omitted). It could not have overcome either. *See id.* (denying intervention, even though movant had "specific, private interests" and "would make arguments different from" government, because government and movant's interests had not yet diverged).

Timeliness is not, contra Carroll, assessed based on when the litigation started going badly for the existing defendant, or when the intervenor started thinking it could do better. "Differences of opinion regarding an existing party's litigation strategy or tactics used in pursuit thereof, without more, do not rise to an adversity of interest." *Guenther v. BP Ret. Accumulation Plan*, 50 F.4th 536, 543 (5th Cir. 2022).

Next, Carroll shows no relevant prejudice. It does not and cannot rebut the Supreme Court's repeated admonitions that an existing party can "hardly contend that its ability to litigate the issue was unfairly prejudiced simply because [of] an appeal" taken by an intervenor instead of the original defendant. *McDonald*, 432 U.S. at 394; *see also Cameron*, 595 U.S. at 281-82 (same).

VRLC will, however, undisputedly be prejudiced if its motion is denied. And the circumstances here are highly unusual: the district court vacated an entire Rule nationwide without even considering this Court's severability analysis. The vacatur was vastly overbroad and unneeded to redress Carroll's asserted injuries, and it unnecessarily impaired nonparties' rights. VRLC Opening Br. 33. Moreover, the government abruptly and unusually ceased defending the Rule mid-appeal period. VRLC's motion is timely.

### 2. Denying VRLC intervention would impair its legal interests.

No party disputes that interests sufficient to support standing likewise support intervention—although such interests are not *necessary*, as intervenors, in general, need not have standing. *See Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562, 566 (5th Cir. 2016). That VRLC's interests are in part economic supports intervention: "economic interests can justify intervention when they are directly related to the litigation," as VRLC's are. *Id*. at 568; *see also supra* Section I.

18

Carroll forfeited its argument as to whether disposition of this matter could impair VRLC's interests by not addressing it below. *See* ROA.5410-11, *Rollins v. Home Depot USA*, 8 F.4th 393, 397-98 (5th Cir. 2021) (discussing forfeiture). Even if it had not, Carroll has no rejoinder to the fact that disposition of this matter without intervention will impair VRLC's interests because the "relief sought by the plaintiff[]" is forcing VRLC "to expend resources," and the provisions at issue benefitted VRLC and will permanently "be taken away if the plaintiff[] prevail[s]." *La Union Del Pueblo Entero v. Abbott*, 29 F.4th 299, 307 (5th Cir. 2022) (holding intervention should have been granted).

## B. Alternatively, VRLC should be permitted to intervene.

For all the reasons explained in its opening brief, none of which Carroll specifically refutes, VRLC should also be allowed to permissively intervene. VRLC Opening Br. 36-37.

## III. The definition of sex discrimination and de minimis harm rule, Sections 106.10 and 106.31(a)(2), should be severed, leaving the remainder of the 2024 Rule in effect.

### A. The definition of sex discrimination and de minimis rule are severable and should be severed.

This Court's precedent, which analyzes (1) agency intent and (2) whether remaining provisions can "function sensibly," squarely supports severance here— as Defendants don't dispute. *Texas v. United States*, 126 F.4th 392, 419 (5th Cir. 2025). And Carroll, finding no foothold in this Court's precedent, does not even

19

acknowledge it, instead relying on district-court opinions. Carroll thus doesn't begin to carry its burden to show non-severability. VRLC Opening Br. 38.

First, the parties don't dispute that the 2024 Rule, with its *seven* severability clauses, expressly intended for Sections 106.10 and 106.31(a)(2) to be severable. *See also* 89 Fed. Reg. at 33,848 (2024 Rule's provisions are "intended to operate independently of each other"). To argue otherwise, Carroll relies on a district-court decision that this Court held "unduly ignore[d] the severability clause" and "erred by not severing" the unlawful provision. *Texas*, 126 F.4th at 419 (modifying *Texas v. United States*, 691 F. Supp. 3d 763, 788-89 (S.D. Tex. 2023)); *see also* Carroll Br. 54-55. Carroll also says a court cannot "assume" what the Department would have "preferred" and tries to find hidden implied meaning in the 2024 Rule's cost-benefit analysis. Carroll Br. 56. But there is no need to assume or infer anything because the Department "remove[d] any doubt" by explaining that it "would have adopted the remaining provisions of the [2024] Rule without any of the other provisions." 89 Fed. Reg. at 33,848 (internal quotations omitted).

Second, the 2024 Rule functions sensibly without Sections 106.10 and 106.31(a)(2). Regardless of whether these two provisions are the Rule's "heart," this Court has held that a law's "heart" can be "legally distinct and … decoupled" from its other provisions. *Texas*, 126 F.4th at 420. The 2024 Rule will function sensibly without Section 106.10's definition of "discrimination on the basis of

20

sex." After all, no party contends that the 2020 Rule did not function sensibly, despite also containing and not defining that term. *Contra* Carroll Br. 55. And no party contends Section 106.31 did not function sensibly for a half-century without the de minimis subparagraph in 106.31(a)(2). Severing that subparagraph will simply return Section 106.31 to its prior form, and it will function as sensibly as before.

Finally, the Department did not forfeit its severability argument. A party does not forfeit an argument unless it "fail[s] to raise it" below or "fail[s] to adequately brief the argument on appeal." *Rollins*, 8 F.4th at 397-98. Carroll does not dispute that the Department raised severability below; it only complains it was "inadequately briefed below." Carroll Br. 54. But Carroll cites no case law finding an argument forfeited due to inadequate briefing below, let alone where a party wrote over a dozen pages on it, as the Department did on severability at summary judgment. ROA.1710-11, 1715-16, 1745-46, 1754-58, 4813, 4833-36.

### B. The definition of hostile-environment harassment and remaining provisions Carroll challenges are lawful.

The district court erred when it found portions of the 2024 Rule to be unlawful. The hostile-environment-harassment definition is not arbitrary or capricious, unduly restrictive, overbroad, or vague. Likewise, the provisions on notice, prompt and effective action, initiation of grievances, and privacy protections are constitutional and well-reasoned.

### 1. The 2024 Rule's definition of hostile-environment harassment is lawful.

First, the hostile-environment standard is well reasoned. No party disputes that the 2024 Rule reinstated a near-verbatim definition of hostile-environment harassment that stood for decades before the 2020 Rule and that the Supreme Court cited and never disapproved. *See Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 647-48, 651 (1999). Nor does any party dispute that the 2024 Rule's standard is nearly identical to the Department's administrative-enforcement standards for harassment based on race, color, national origin, and disability under Title VI and Section 504. While Carroll protests that "[t]he same text cannot mean one thing in a private lawsuit and another to the Department," Carroll Br. 45, this Court recognizes exactly such a distinction for racial harassment. *See* VRLC Opening Br. 46. It is hardly unreasonable for the 2024 Rule to harmonize standards across Title IX, Title VI, and Section 504.

Second, the hostile-environment standard creates no impermissible content- or viewpoint-based restrictions. As the Supreme Court explained in *R.A.V. v. City of St. Paul*, "sexually derogatory 'fighting words,' among other words," constitute "proscribable" "content-based" speech because they are "swept up incidentally" by "a statute directed at conduct rather than speech"—namely, by "Title VII's general prohibition against sexual discrimination in employment." 505 U.S. 377, 389 (1992). The following year, the Supreme Court affirmed in *Harris v. Forklift Sys.,*

22

*Inc.* that Title VII applied to speech-only harassment. 510 U.S. 17, 23 (1993). Like Title VII, the 2024 Rule contains a "general prohibition against sexual discrimination" that is "directed at conduct" but can also sweep up derogatory sex-based speech, and can apply to speech-only harassment. Indeed, the Supreme Court recently affirmed that, just as the 2024 Rule directs, the First Amendment can allow schools to regulate speech that constitutes "serious or severe bullying or harassment targeting particular individuals." *Mahanoy Area Sch. Dist. v. B.L.*, 594 U.S. 180, 188 (2021).

Carroll claims that courts have invalidated harassment policies "similar" to the 2024 Rule, but its cited cases are inapposite. Carroll Br. 47. In one, the policy lacked a severe-or-pervasive requirement and thus was not at all "similar" to the 2024 Rule. *Dambrot v. Cent. Mich. Univ.*, 55 F.3d 1177, 1182 (6th Cir. 1995).[7] In another, the court did not reject the policy but merely held that it was vague as applied to a professor's choice of academic topics. *Cohen v. San Bernardino Valley Coll.*, 92 F.3d 968, 971-72 (9th Cir. 1996). But Carroll does not bring an as-applied challenge, and moreover, "nothing in the [2024 Rule] restricts the academic freedom of faculty members" or "abridge[s] … the use of particular textbooks or curricular materials." 89 Fed. Reg. at 33,507 (citing 34 C.F.R.

---

[7] *Dambrot* also erroneously ignores *R.A.V.*'s pronouncement that anti-discrimination laws like Title VII (and, by extension, Title IX) do not violate the First Amendment. *Id.* at 1184-85.

§ 106.42). In a third case, the court rejected a prior restraint that banned federal employees from accepting honoraria for *any* work regarding *any* subject—even if unrelated to their government duties. *United States v. Nat'l Treasury Emps. Union*, 513 U.S. 454 (1995). The 2024 Rule is nothing like that sprawling ban.[8]

Third, the hostile-environment standard is not overbroad. Carroll's cited cases involve harassment policies completely unlike the 2024 Rule. Carroll Br. 46, 48. In one, the policy prohibited harassment based on a non-exhaustive litany of categories—including "clothing," "social skills," and "hobbies"—unprotected under federal law. *Saxe v. State Coll. Area Sch. Dist.*, 240 F.3d 200, 220 (3d Cir. 2001). The policy also prohibited conduct with the "*purpose or effect*" of affecting a student's education, "[u]nlike federal anti-harassment law, which imposes liability only when harassment has 'a systemic *effect*.'" *Id.* at 210 (citing *Davis*, 526 U.S. at 633). Finally, the court criticized the policy for "not … requir[ing] any threshold showing of severity *or* pervasiveness." *Id.* at 217 (emphasis added). The 2024 Rule avoids these problems: it prohibits harassment based on one federally protected trait (sex), looks only to the effect—not purpose—of harassing conduct, and contains a severe-or-pervasive requirement.

---

[8] *See also Piggee v. Carl Sandburg Coll.*, 464 F.3d 667, 674 (7th Cir. 2006) (college's sexual harassment policy not unlawful prior restraint).

Carroll erroneously claims *Speech First, Inc. v. Cartwright* rejected a harassment policy because, like the 2024 Rule, it contained the words "severe or pervasive" and "limit." Carroll Br. 48. But *Cartwright* never analyzed—much less rejected as overbroad—those words. It found overbreadth based entirely on other reasons, including the policy's prohibition of conduct that "*may* be humiliating" or "unreasonably … alters" a student's educational experience; or "condoning," "encouraging," or even "failing to intervene" to stop another student's conduct. 32 F.4th 1110, 1125-26 (11th Cir. 2022) (emphasis in original). None apply to the 2024 Rule.

Furthermore, the 2024 Rule is hardly overbroad merely because it regulates some online and off-campus speech. Schools have "additional license" to regulate online and off-campus speech when it constitutes "serious or severe bullying or harassment targeting particular individuals." *Mahanoy*, 594 U.S. at 188. Consistent with *Mahanoy*, this Court has held a school may constitutionally discipline a student who directed the n-word and threats at two teachers via Facebook and YouTube. *See Bell v. Itawamba Cnty. Sch. Bd.,* 799 F.3d 379, 384, 390-400 (5th Cir. 2015) (en banc). Even the 2020 Rule requires schools to address some incidents of online and off-campus speech, § 106.44(a) (2020), 85 Fed. Reg. at 30,574, including speech that may originate in an apartment or hotel room or on a personal device. *Id.* at 30,093, 30,200 n.877, 30,202.

Finally, the 2024 Rule's hostile-environment standard is not vague. Carroll decries the 2024 Rule's totality-of-the-circumstances test, claiming that its consideration of various factors, such as the parties' ages, grants schools "extraordinary discretion." Carroll Br. 50 (citing *Tennessee v. Cardona,* 737 F. Supp. 3d 510 (E.D. Ky. 2024)). But a totality-of-the-circumstances test is only "extraordinary" in that it is extraordinarily common. For instance, the 2020 Rule states that schools may use a "totality of the circumstances analysis to evaluate whether alleged conduct does or does not meet the definition" of harassment. 85 Fed. Reg. 30,026, 30,150. *Davis*, too, recognized "a constellation of factors including the ages … of parties involved, and nothing in the [2020 Rule] disallows or disapproves of that common sense approach." *Id.* at 30,150.

Carroll also misunderstands the 2024 Rule. That the 2024 Rule's harassment definition requires "some impact" does not mean "[a]nything" can constitute actionable harassment, *contra* Carroll Br. 50—only that the definition "does not specify any *particular* [impact]," "such as reduced grades or missed classes." 89 Fed. Reg. at 33,511. Nor does the 2024 Rule consider any speech to be harassment merely because it is "subjectively" unwelcome. *Contra* Carroll. Br. 4. Rather, it must be "subjectively *and* objectively offensive," § 106.2 (emphasis added), consistent with the Supreme Court's dual requirement under Title VII. *Harris*, 510 U.S. at 21-22.

**2. The other 2024 Rule provisions Carroll challenged are lawful.**

Beginning with the "knowledge" and "prompt and effective action" requirements, under the 2024 Rule, schools need only "promptly and effectively" address sex-based harassment when they are "notified" or have "knowledge" of it. §§ 106.44(a)(1), 106.44(f)(1). In contrast, the 2020 Rule allows schools to bury their heads in the sand. As Carroll acknowledges, "reports to one of myriad employees [do]n't suffice to give the [postsecondary institution] notice" under the 2020 Rule, and therefore institutions have no obligation to address harassment even when many employees know of it. Carroll Br. 53. Yet Carroll strangely complains that the 2024 Rule—which closes this gap—is arbitrary and capricious. There is nothing more reasonable than ensuring that schools whose employees know of harassment must address it under Title IX, just as Title VI and Section 504 require. VRLC Opening Br. 50-51.

The grievance-initiation provision is also lawful. Carroll's fearmongering notwithstanding, Title IX coordinators cannot initiate a grievance without a complaint under the 2024 Rule unless they determine that the alleged harassment "presents an imminent and serious" health or safety threat or prevents the school from ensuring equal access to education. § 106.44(f)(1)(v)(B); *contra* Carroll Br. 50-51, 53. To make this determination, they must consider at least eight factors, including: the complainant's wishes not to initiate a grievance; safety concerns; the

harassment's severity and scope; the parties' ages, relationship, and positions; and evidence availability. § 106.44(f)(1)(v)(A)(1)-(8). In contrast, the 2020 Rule allows Title IX coordinators to initiate a grievance whenever "necessary" without enumerating any factors to determine what is "necessary." § 106.30(a) ("formal complaint"); 85 Fed. Reg. at 30130-31. Unsurprisingly, it has subjected multiple VRLC clients to unwanted grievances. ROA.5041. The 2024 Rule is far more reasonable and conducive to Carroll's stated goal of preventing unwarranted grievances.

Finally, the provision protecting privacy during investigations is lawful. Far from indiscriminately applying to "any" speech during a grievance, it has "narrow terms" and "a limited duration"—the very guardrails Carroll demands. Carroll Br. 51-52. Specifically, any privacy measures: (i) may only apply "during" an investigation; (ii) must be "reasonable"; and (iii) must not restrict the parties from obtaining evidence, consulting with loved ones and advisors, or otherwise preparing for an investigation. § 106.45(b)(5). Under these narrow terms, schools may *temporarily* limit "[w]idespread disclosures" of personally identifiable information to the media to ensure the fairness of an investigation or prevent retaliation. 89 Fed. Reg. at 33,674; *contra* Carroll Br. 51. However, a school *cannot* impose a "categorical prohibition on criticizing [its] handling of grievance procedures" because that "is not a reasonable step to protect privacy." 89 Fed. Reg.

28

at 33,674. Such measures are no more onerous than those permitted by the 2020 Rule, which allows schools to restrict parties and their advisors from: discussing allegations of harassment where "no formal complaint is filed"; discussing the evidence they inspect in an investigation; or speaking "disparaging[ly] or "maliciously" of another party or witness. 85 Fed. Reg. at 30,296-98.

## CONCLUSION

For the foregoing reasons, VRLC respectfully requests that this Court reverse the district court's erroneous holding that VRLC lacks standing, hold it is entitled to intervene, and sever Sections 106.10 and 106.31(a)(2), permitting the remainder of the 2024 Rule to remain in effect.

Dated: April 2, 2026

Respectfully submitted,

/s/ Rachel Smith
Shiwali Patel
Rachel Smith
Elizabeth Tang
Elizabeth E. Theran
NATIONAL WOMEN'S LAW CENTER
1350 I Street NW, Suite 700
Washington, DC 20005
Telephone: (202) 588-5180
spatel@nwlc.org
rsmith@nwlc.org
etang@nwlc.org
etheran@nwlc.org

Ellen Eardley
Andrea Dobson-Forsee
MEHRI & SKALET PLLC
2000 K Street NW, Suite 325

Washington, DC 20006
Telephone: (202) 822-5100
aforsee@findjustice.com
eeardley@findjustice.com

*Attorneys for Proposed Intervenor-*
*Defendant VRLC*

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P.

32(a)(7)(B) because it contains 6,489 words, excluding the parts of the brief

exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P.

32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has

been prepared in a proportionally spaced typeface using Microsoft Word 365 in

Times New Roman 14 point.

/s/ Rachel Smith
Rachel Smith
NATIONAL WOMEN'S LAW CENTER
1350 I Street NW, Suite 700
Washington, DC 20005
Telephone: (202) 588-5180
rsmith@nwlc.org

Dated: April 2, 2026

**CERTIFICATE OF SERVICE**

I certify that on April 2, 2026, I electronically filed the foregoing brief in PDF format with the Clerk of Court via the appellate CM/ECF system.  I certify that all counsel of record are registered CM/ECF users, and service will be accomplished via the appellate CM/ECF system.

/s/ Rachel Smith
Rachel Smith
NATIONAL WOMEN'S LAW CENTER
1350 I Street NW, Suite 700
Washington, DC 20005
Telephone: (202) 588-5180
rsmith@nwlc.org